IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARINE VENTURES, LLC, an
Oregon limited liability company d/b/a
FUEL DYNAMICS, LLC, a Florida
limited liability company,                    Case No. 99-403-CIV-ORL-19B

     Plaintiff,

vs.

WOUTER LISSEVELD,
WILLIAM O'CONNELL,
WILLIAM P. MILLER,
ALIE J. STAMMES, and
ENVIRO RESPONSE PRODUCTS,
INC., a Florida corporation,

     Defendant.

_____/

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF A
## SUMMARY JUDGMENT IN ITS FAVOR ON THE COUNTERCLAIM

The Defendants' Counterclaim (Doc. 68) purports four claims for relief against Marine Ventures, LLC, dba Fuel Dynamics, LLC ("Fuel Dynamics"), B&S Investments, Inc. ("B&S") and Charles Roth ("Roth").[1] The claims are for unfair competition under the Lanham Act, 15 U.S.C. Section 1125(a); slander; civil conspiracy; and copyright infringement.[2] Fuel Dynamics, B&S and Roth contend for a summary judgment dismissing the counterclaims against them because:   (1)

---

[1] William M. Bruce and Stephen R. Forcella have been ordered dismissed (Doc. 102). The business relationship between the parties is described in the Order granting, in part, Fuel Dynamics' Motion for Preliminary Injunction (Doc. 40, pp. 3-5).

[2] This pleading is a refinement of the initial Answer (Doc. 32).

Enviro Response Products, Inc. ("Enviro Response") is the only Defendant with arguable standing to sue; (2) there is no claim for unfair competition; (3) B&S and Roth are not individually liable as a matter of law for liability claims against Fuel Dynamics, or for slander committed by an employee of Fuel Dynamics; (4) there is no independent tort on which to base an action for civil conspiracy, and Fuel Dynamics may not conspire with itself; and (5) there is no statutory claim for copyright infringement, and a claim for actual damages should be barred.

**The Defendants, Other Than<br>Enviro Response, Do Not Have Standing to Sue**

All of the Defendants have sued Fuel Dynamics, B&S and Roth.   Enviro Response, a corporation, is the registered owner of the ALGAE-X trademark and of the business of selling Magnetic Fuel Conditioners (MFC's).   Lisseveld and O'Connell are officers of the corporation, Miller is an employee, and Stammes is unrelated, but for her status as the putative transferee of its assets.

Lisseveld's sworn statement (Doc. 74) relates in text and in its Exhibits B and C, that Enviro Response sold all of its assets, including its trademark and its copyright claim to Stammes who then sold them to ALGAE-X International, a Nevada corporation, which is not a party to this case.   The Circuit Court for Orange County, Florida, has ruled that this was a fraudulent transfer to avoid payment of Fuel Dynamics' judgment. (Doc. 101, A.33).   If that transfer was fraudulent only for the purpose of avoiding the judgment which has since been paid (Doc. 96, p. 5), then

2

Enviro Response, the Nevada corporation, owns all of the property rights for which the Florida corporation contends, and it alone has standing to sue.

A conveyance of property may be fraudulent as to creditors of the transferor, but the transfer does not affect its validity as between the parties to the transaction. Consequently, except as to the claim of a protected creditor, the transferee (the Nevada corporation) becomes vested with such ownership and title as the transferor possessed and purported to convey. *See Kahn v. Wilkins,* 36 Fla. 428, 18 So. 584, 586 (1895); *Reel v. Livingstone,* 34 Fla. 377, 16 So. 284, 287 (1894); and *Myers v. Brook,* 708 So.2d 607, 611 (Fla. 2d DCA 1998) (the creditor may recover a judgment for the value of the asset transferred, as adjusted under Section 726.109(3), Florida Statutes, or the amount necessary to satisfy the creditor's claim, whichever is less). Therefore, inasmuch as Fuel Dynamics' claim has been paid in full, the transfer would stand as valid between the transferor and the transferee, and Enviro Response, the Florida corporation, would no longer have standing to sue.

That reasoning, however, would deprive Fuel Dynamics from having an effective remedy should it prevail in its actions in this case. For the purpose of having a complete adjudication of the dispute, Fuel Dynamics contends that the fraudulent transfer was fraudulent as to all of its claims against Enviro Response in this case which was initiated April 5, 1999, a few days following Stammes' transfer, effective March 31, 1999, of the assets to the Nevada corporation (Doc. 74, Ex. C).

If Enviro Response, the Florida corporation, is deemed to continue as owner of the assets transferred to the Nevada corporation, then only it may sue for damages and equitable relief described in the Counterclaim.   This is because individual shareholders may not sue for damages belonging to a corporation, and absent an interest in the property or business, the other Defendants are not proper parties as Counterplaintiffs. *See Schaffer v. Universal Rundle Corporation*, 397 F.2d 893 (5th Cir. 1968); *Alario v. Miller*, 354 So.2d 925 (Fla. 2d DCA 1978) (stockholder does not have standing to sue for damages belonging to corporation); and *New Orleans Pub. Serv. V. United Gas Pipeline*, 732 F.2d 452, 464-465 (5th Cir. 1984), *cert. denied*, 469 U.S. 1019 (1984) (parties may not assert claims for harms to another). *Also see Glickstein v. SunBank/Miami, N.A.*, 922 F.2d 666, 670 (11th Cir. 1991) (distinguishing between capacity and standing).

Therefore, Fuel Dynamics is entitled to a summary judgment in its favor and against Lisseveld, O'Connell, Miller and Stammes on their Counterclaim.

## B&S and Roth are not Liable for Liability Claims Against Fuel Dynamics

Roth is the manager of Fuel Dynamics which is a Florida limited liability company (Doc. 92, A.23).   The manager of a limited liability company is not liable for a liability of the company except as provided by Section 608.4362, Florida Statutes (1999).   *See* Section 608.436, *Id.*   Equally, B&S is not the same as Fuel Dynamics, and there is no claim made for its separate identity to be set aside. *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1116-1121 at 1121 (Fla. 1984).

Consequently, Roth and B&S are entitled to a summary judgment in their favor and against Enviro Response on its Counterclaim.

## Enviro Response Does Not Have
## A Claim for Unfair Competition Under The Lanham Act

There is a claim for entitlement to relief on account of unfair competition (Doc. 68, ¶44) resulting from Fuel Dynamics' copying and alteration of copyrighted sales literature.

The sales literature in question is in the Appendix to the Plaintiff's Motion for a Preliminary Injunction (Doc. 19, A.36-44 and 45-55), and in the Appendix to the Declaration of Colin Patrick Wickham (Ex. B, C)[3] The Defendants claim that this sales literature has been copied and used by Fuel Dynamics which substituted its name for ALGAE-X and replaced the registered name ALGAE-X with "Fuel Dynamics" and "FUEL MAG."

The Wickham Declaration states that Enviro Response Products lawfully distributed the FUEL MAG MFC product under the name ALGAE-X, but assigned its sales rights to Fuel Dynamics in September 1997. Most importantly, Wickham states that since January 1995, the FUEL MAG units have been sold in the United States and Europe and have had a unique trade dress which Enviro Response has copied.

Notice that the brochure, which is Exhibit C to Wickham's Declaration, pictures a FUEL MAG device sold by Enviro Response with FUEL MAG's consent bearing the name DE-BUG U.S.A., as well as ALGAE-X, and it carries a copyright

---

[3] The Wickham Declaration is in the Appendix to this Memorandum. (A.1-5).

bug of 1996.  Whereas, the FUEL MAG brochure which is Exhibit B to Wickham's

Declaration, and for which he claims ownership and first use, pictures the FUEL

MAG device and carries a copyright bug of 1997.

Lisseveld admits that the Purifiner FUEL MAG MFC's which Enviro

Response sold had the name FUEL MAG stamped into the metal casting.[4]  He

affixed the DE-BUG U.S.A. and ALGAE-X names to the MFC's in violation of the

DE-BUG U.S.A. trademark rights which led to the civil action noted in footnote 4.

Roth's Affidavit given in support of this Memorandum explains the sales

literature history of the FUEL MAG brochures beginning in 1997 when Fuel

Dynamics acquired the FUEL MAG distributorship.

The Settlement Agreement which resulted in Enviro Response's withdrawal

from Fuel Dynamics, effective in June 1998, recognized its ownership of the

ALGAE-X trademark, but prohibited use of that trademark, advertising and

promotional materials to associate FUEL MAG with ALGAE-X (Doc. 19, Appendix

26, Settlement Agreement ¶5, p. 3).

The Court's finding (Doc. 40, p. 13) that "much of the advertising material

predates the agreements between the parties and, thus, was originally owned by

Mr. Lisseveld and Enviro Response," was without the benefit of Wickham's

Declaration, and it overlooks the fact that Lisseveld sold FUEL MAG as an

authorized distributor for Wickham-Purifiner (Wickham, ¶8).    Moreover, the

Settlement Agreement did not relinquish FUEL MAG's advertising, sales or

---

[4] This is Lisseveld's testimony at Tr.404 in *Lisseveld, et al. v. Marcus, et al.*, (M.D. Fla. Case No. 96-336-CIV-FTM-17D, Nov. 18, 1999) (A.6-9) See Doc. 99, A.55.

promotional materials, and its good will to Enviro Response and Lisseveld, and did not limit in any way Fuel Dynamics' use of the advertising and sales materials used to promote its continued sales of FUEL MAG MFC's.  The Settlement Agreement did not prohibit Enviro Response and Lisseveld from selling a competitive product, but it also did not strip Fuel Dynamics of its good will and ability to continue selling FUEL MAG MFC's as the Wickham-Purifiner Distributor.

Lisseveld proposes to turn the distinctive advertising and sales materials developed for FUEL MAG into his exclusive property because Wickham-Purifiner permitted him to sell FUEL MAG under the name ALGAE-X.  If Lisseveld intended to acquire FUEL MAG's public image, then the Settlement Agreement would have provided that Fuel Dynamics retained the exclusive FUEL MAG Distributorship, but not its goodwill, sales and advertising materials.

These circumstances are comparable to those involving unfair competition in *Francis S. Denney, Inc. v. I.S. Laboratories, Inc.*, 758 F. Supp. 140, 142-143 (S.D. N.Y. 1990) (summary judgment granted) wherein the seller of goodwill and trademarks was held to have been precluded from referring to the history of the products and business he had sold to promote the sale of a confusingly similar product.

## Roth and B&S are not
## Liable for the Alleged Slander

The claim for slander (Doc. 68, ¶45), does not allege legal causation, and for its relief demands an accounting for damages.  Apart from these imperfections, the slander is alleged to have been spoken by "Fuel Dynamics, LLC's employees, Julie Austin and Michael Forcella" who are not parties.  The slanderous statement made in February 1999, is alleged to have been:

> . . . repeated statements that defendant Wouter Lisseveld and/or his corporation Enviro Response Products, Inc. had been found guilty of infringing a patent covering plaintiff's magnetic fuel conditioners and the Court had received substantial damages for the alleged infringement and as a result, the public should not purchase magnetic fuel conditioners from defendants as they would soon be out of business.

The issue is whether Fuel Dynamics, the employer, may be liable for its employees' intentional tort.  B&S and Roth, who are not the employer, are not liable.  (*supra, p. 4*).

The Counterclaim does not allege that Austin and Forcella were acting within the scope of their employment when speaking the alleged slander (it may be inferred).  *See M.V. By and through W.W. v. Gulf Ridge Council Boy Scouts of America, Inc.*, 529 So.2d 1248 (Fla. 2d DCA 1988) (liability for intentional act under theory of respondeat superior a jury question).

The alleged statements would result in prejudice to Enviro Response's business if untrue.  Therefore, the statements would be actionable *per se* in favor of

Enviro Response against Fuel Dynamics. *Adams v. News-Journal Corp.,* 84 So.2d 549, 551 (Fla. 1955); *Seropian v. Forman,* 652 So.2d 490, 495 (Fla. 4th DCA 1995); and *Wolfson v. Kirk,* 273 So.2d 774, 778 (Fla. 4th DCA 1973), *cert. denied,* 279 So.2d 32 (Fla. 1973) (a reasonable person might have taken the statement to mean that the party was a person with whom commercial relations were undesirable).

The question arises of whether the Court should retain jurisdiction of this slander claim if all of Enviro Response's other claims should be dismissed? The Court may decline to exercise its supplemental jurisdiction over this state law claim (28 U.S.C. §1367(a)) in consideration of factors such as Enviro Response's failure to plead the jurisdictional amount, the lack of complete diversity prior to Forcella's dismissal, and whether the alleged slander involves the common nucleus of operative fact found in Fuel Dynamics' claims for unfair competition, injunction, and damages. *See Odom v. Columbia University,* 906 F.Supp 188, 197 (S.D. N.Y. 1995).

## The Defendants Do Not Have a
## Claim for Civil Conspiracy

There is a claim that Fuel Dynamics, B&S and Roth are liable for unspecified damages assumed (not alleged) to have resulted from a civil conspiracy to utilize financial resources to conduct "continuous litigation based in part upon knowingly false allegations" concerning Enviro Response and Lisseveld. The litigation referred to is that in Multnomah County, Oregon, in Orange County, Florida, and in this Court. (Doc. 68, ¶46).

The Oregon litigation ended in an award in arbitration, order and judgment, all in favor of Fuel Dynamics (Doc. 19, Appendix 137-145, 146-149), and the Oregon judgment which was domesticated in the Circuit Court for Orange County, Florida has been paid (Doc. 96, p. 5). Fuel Dynamics' case in this Court has been brought to remedy continuing and new acts of statutory and common law unfair competition. The mentioned past litigation between Fuel Dynamics, Enviro Response, Lisseveld and Stammes is *res judicata*, as described in the Fourth Defense to the Counterclaim (Doc. 86, ¶ ¶57-59), and is not subject to a collateral attack.

All of the issues in the Oregon and Florida actions are barred from re-litigation and are immune from collateral attack under state and federal principles of claim preclusion. *See Stogniew v. McQueen,* 656 So.2d 917 (Fla. 1995); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1551 (11th Cir. 1990), *cert. denied* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed. 2d 398 (1990); *Migra v. Warren Sch. Dist. Bd. Of Educ.,* 765 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed. 2d 56 (1984) (state court judgment has same preclusive effect in federal court as it would have in the Florida courts).

The fact that the past litigation between these parties and their privies was lawful is determinative of the Defendants' otherwise imperfect claim for civil conspiracy. This is because the existence of an action for civil conspiracy is predicated on the existence of an independent tort done pursuant to the conspiracy. The conduct of lawful litigation which is *res judicata* does not constitute a separate

tort lawfully sufficient to sustain an action for civil conspiracy. *See Rivers v. Dillards Dept. Store, Inc.,* 698 So.2d 1328 (Fla. 1st DCA 1997).

Furthermore, not even the claim for slander would save this claim for civil conspiracy because Fuel Dynamics is the sole proper party *(supra.* pp. 4-5), and a corporate entity cannot conspire with itself. A cause of action for civil conspiracy requires an agreement between two or more persons to achieve an illegal objective, one or more overt acts pursuant to the agreement, and resulting injury to the complainant. *Armbrister v. Roland Intern. Corp.,* 667 F.Supp 802, 809 (M.D. Fla. 1987) citing *Renpak v. Oppenheimer,* 104 So.2d 642, 646 (Fla. 2d DCA 1958).

In this case, a corporation cannot conspire with its officers and directors who act in their corporate capacities, not individually, unless it is alleged and proven that they had a personal stake in achieving the object of the conspiracy. *On-Site Development Corp. v. Riley,* 564 So.2d 201, 204 (Fla. 5th DCA 1990). There is no basis in the pleading or proof for holding Roth liable as a co-conspirator.

## The Claim for Copyright Infringement Should be Dismissed

There is a claim for copyright infringement of registered copyrights (Doc. 68, ¶ 47), but the date of copyright registration is not alleged, nor is it alleged that Enviro Response (as copyright owner) gave notice to the infringer before bringing an

action as required by 17 U.S.C. Sections 411, 412,[5] The Copyright Act of 1976 (the "Act").

Section 411 requires as a prerequisite to an action for infringement of a copyright that there be a registration of the copyright claim, and that notice be served on the infringer within 30 days of first publication and declaration of intention to secure copyright in the work.   Wickham-Purifiner used the subject advertising materials in 1996-1997, and Fuel Dynamics has used them since 1997. Enviro Response's voidable copyright registration in May 1999, (n.5), is ineffectual insofar as its entitlement to a statutory action is concerned.

Section 412 of the Act provides that no award of statutory damages or of attorney's fees, as provided for by Sections 504 and 505, shall be made for an infringement commenced before the effective date of copyright registration unless the registration is commenced within three months after first publication. *Cable/Home Communications Corp. v. Network Productions, Inc.,* 902 F.2d 829 (11th Cir. 1990); *Dielsi v. Falk,* 916 F.Supp 985 (I.D. Cal. 196) (lack of subject matter jurisdiction).

The owner of a subsequently registered copyright may sue for actual damages in a copyright infringement action.   *Fitzgerald Pub. Co. Inc. v. Baylor Pub. Co., Inc.* 670 F.Supp. 1133, 1138-1139 (E.D. N.Y. 1987) holding in part that the plaintiff who

---

[5] The Copyright Act of 1976, 17 US.C. §§101 et seq., applies its protection to literary and non-literary works.  There is evidence that Enviro Response registered a copyright covering ALGAE-X marketing materials for 1997, on May 27, 1999 (TX4889923), and for 1996 materials the same day (TX4889922) (A.10-13).  Fuel Dynamics' Complaint was filed April 15, 1999 (Doc. 1), and the Counterclaim was first filed June 25, 1999 (Doc. 32).

failed to register copyrights before the infringement occurred must prove actual damages attributable to the infringing activities, and:

> The primary measure for the recovery of actual damages under 17 U.S.C. §504(b) is the extent to which the market value of the copyrighted work at the time of infringement has been harmed or destroyed by the infringement . . . The best method available for measuring this diminution in market value is the profit lost by the plaintiff due to the infringements . . . Further, the profit lost by the plaintiff is not equivalent to the profit gained by the infringers . . . The plaintiff is entitled to his own lost profit, or the profit of the infringers, whichever is greater. *Fitzgerald supra* at 1138-1139.

Fuel Dynamics' defense of a claim for actual damages by Enviro Response has been frustrated by Enviro Response's refusal to provide discovery of damages information. This refusal has led to Fuel Dynamics' motion for an order compelling discovery (Doc. 88) which was granted (Doc. 93). The order requiring the discovery to be furnished was not obeyed, consequently, Fuel Dynamics has filed a motion for sanctions (Doc. 99).

The discovery period in this case has expired, and there is no means by which Enviro Response should be permitted  to prove its actual damages resulting from the alleged infringement because it has refused to furnish Fuel Dynamics with any reliable information from which the amount of its damages could be calculated, or from which Fuel Dynamics' claim for statutory damages might be proven.[6]

Therefore, the claim for copyright infringement should be stricken or adjudged dismissed.

---

[6] Fuel Dynamics might be able to attempt proof of its own lost profit, but will more likely be restricted to statutory damages for unfair competition under the Lanham Act, and the remedy of injunctive relief if it should be the prevailing party.

## Conclusion

The Counterclaim should be dismissed upon summary judgment standards.

*See Anderson v. Liberty Lobby, Inc.*, 477 US. 242, 248-251, 106 S.Ct. 2505, 91 L.Ed.

2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325, 106 S.Ct. 2548,

2553-2554, 91 L.Ed. 2d 265 (1986).

Respectfully submitted this 4th day of February, 2000.

Eli H. Subin
Florida Bar No. 0079123
Holland & Knight LLP
200 South Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, Florida 32802
(407) 244-1130
(407) 244-5288 - FACSIMILE
Attorneys for Plaintiff, Marine
Ventures, LLC, d/b/a Fuel Dynamics,
LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail on the 4th day of February to Merrill N. Johnson, Esq., Johnson & Livingston, 800 Harbour Drive, Naples, Florida 34103:

Eli H. Subin

ORL1 #534456 v1

14

# A P P E N D I X



Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

United States Patent and Trademark Office

Reg. No. 2,277,470

Registered Sep. 14, 1999

## TRADEMARK
### PRINCIPAL REGISTER

## FUEL MAG

FUEL MAG INTERNATIONAL LIMITED (NEW ZEALAND LIMITED LIABILITY COMPANY)
11 HURON STREET
TAKAPUNA, AUCKLAND, NEW ZEALAND

FOR: FUEL FILTER FOR TREATMENT AND CONTROL OF MICROBIAL GROWTH IN DISTILLATE FUELS AND OILS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-23-1991; IN COMMERCE 9-15-1995.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "FUEL", APART FROM THE MARK AS SHOWN.

SER. NO. 75-442,419, FILED 2-24-1998.

BARBARA BROWN, EXAMINING ATTORNEY











# ALGAE-X®

## The Next Generation in Fuel Decontamination

**EnviroResponse Products, Inc.** introduced Magnetic Fuel Conditioner Technology to the US market in 1993 with the Debug units designed in New Zealand in 1985. Following advances in the technology resulted in the first **ALGAE-X** units in 1995, also made in New Zealand. Now in October 1998, Enviro is introducing the *Next Generation* **ALGAE-X Series.** The new and improved product line is made in the U.S.A. using modern manufacturing, more powerful materials and represents the pinnacle in the evolution of magnetic fuel conditioning technology.

### *Feature Comparison*

**NEW ALGAE-X** versus the **Old LGX Series, now called Fuel Mag.**

Both Product lines feature a Direct Flow-Thru Design. This provides a unit that is Self Cleaning, Zero Maintenance & Zero Flow Restriction. Both ALGAE-X and Fuel Mag feature Standard "O" Ring Seals, and Single Magnet Designs which are great improvements over previous "bowl" type products e.g. DeBug. However, this is where the similarities end.

| ALGAE-X *Upgraded* design Features | Fuel Mag Standard Features |
|---|---|
| **Computerized Precision Manufacturing** | **Die Cast Housing** |
| - Anodized, 6061 Corrosion resistant Aluminum | - LM6 Aluminum |
| - solid, durable material = perfect threads and unbreakable mounting system | - threads in softer die-cast aluminum are easily damaged |
| - precision manufacturing | - inconsistent quality |
| - Max Pressure Rating 250 psi | - Max. Press. 75 psi |
| **Max Power, Grade 8 Magnetic material** | **Medium Power Grade 5 Magnetics** |
| - More powerful magnetics, larger mass & longer flow path for greater effectiveness | |

| LGX 1500 | ¾" NPT model | | FD-X 1200 | ¾" NPT model | |
|---|---|---|---|---|---|
| Weight | 3.5 | Lbs. | Weight | 2.5 | Lbs |
| Price | 475 | USD | Price | 630 | USD |

| **Lifetime Warranty** | **?** |
|---|---|
| **Made in the USA** | **Made in NZ** |

lgx&FM (1).doc



# PRICE & PERFORMANCE COMPARISON

| | *NEW* **ALGAE-X**™ | Old LG-X Series ( Now Fuel Mag ) |
|---|---|---|
| | **LG-X 200** | **FD-X100** |
| Port Size | 1/4" | 1/4" |
| Max Flow Rate | 50 gph | 90 gph |
| Horse Power Range | < 200 | < 100 |
| **Price** | **$ 125** | **$ 135** |
| | **LG-X 400** | **FD-X400** |
| Port Size | 3/8" | 3/8" |
| Max Flow Rate | 180 gph | 225 gph |
| Horse Power Range | < 500 | 80-300 |
| **Price** | **$ 245** | **$ 295** |
| | **LG-X 500** | **(No Comparable Product)** |
| Port Size | 1/2" | |
| Max Flow Rate | 180 gph | |
| Horse Power Range | < 500 | |
| **Price** | **$ 245** | |
| | **LG-X 1000** | **FD-X1000** |
| Port Size | 1/2" | 1/2" |
| Max Flow Rate | 700 gph | 360 gph |
| Horse Power Range | 300-1500 | 250-800 |
| **Price** | **$ 475** | **$ 570** |
| | **LG-X 1500** | **FD-X1200** |
| Port Size | 3/4" | 3/4" |
| Max Flow Rate | 700 gph | 825 gph |
| Horse Power Range | 300-1500 | 600-2000 |
| **Price** | **$ 475** | **$ 630** |
| | **LG-X 3000** | **FD-X2000** |
| Port Size | 1" | 1" |
| Max Flow Rate | 1600 gph | 1500 |
| Horse Power Range | 900 - 3000 | 1500-4000 |
| **Price** | **$ 995** | **$ 1435** |
| | **LG-X 4000** | **FD-X4000** |
| Port Size | 1 1/2" | 1 1/2" |
| Max Flow Rate | 3000 gph | 3450 gph |
| Horse Power Range | 3000 > | 3000 > |
| **Price** | **$ 2795** | **$ 3475** |
| | **LG-X 5000** | **FD-X5000** |
| Port Size | 2" | 2" |
| Max Flow Rate | 5000 gph | 6000 gph |
| Horse Power Range | 5000 > | 3000 > |
| **Price** | **$ 2995** | **$ 4200** |

> These 1/2" & 3/4" units are identical except for the hole drilled in the side. There is no possible explanation or justification for the *differences* in Flow Rates, Horse power ratings or Price difference !!

lgx&FMprice (1).doc



# PRESS RELEASE

**EnviroResponse Products, Inc.**
**PO Box 4011**
**Ft. Myers Beach, FL 33932**

**FOR MORE INFORMATION, CONTACT:**
**Bill O'Connell, Vice President**
**EnviroResponse Products, Inc.**
941 463-0607 FAX: 941-463-7855

FOR IMMEDIATE RELEASE

## New ALGAE Units Now Manufactured in the USA

**Ft. Myers Beach, FL, 28 October 1998**

EnviroResponse Products, Inc. has announced the release of the *Next Generation* of its **ALGAE-X**' Magnetic Fuel Conditioner Products. The new product line is manufactured in the USA. The **LG-X Series**™ features more powerful magnetic circuitry, anodized corrosion resistant marine grade 6061aluminum, and computerized precision manufacturing. which allows the company to offer lower prices and a *Lifetime Warranty*.

Installation of **ALGAE-X**® results in *Optimal Fuel Quality*, increasing safety & reliability of diesel engine systems by preventing filter blockage and keeping fuel tanks free from build-up of sludge. The new **LG-X Series**™ also enhances fuel combustion, improving engine performance, reducing emissions and yielding significant fuel economy. **ALGAE-X**ᵗ cleans the entire fuel system in engines and storage tanks by simply running the engine or a circulating pump.

The new **LG-X Series**™ is available in several standard models for any size Diesel engine application with fuel line sizes from 1/4" to 2". Larger size units e.g. 36" diameter and up, are also available for large volume applications requiring very high flow rates, such as large storage tanks and pipelines.

Please contact the Sales & Marketing Department for additional information and distribution opportunities.



# ALGAE-X
## Magnetic Fuel Conditioning Technology



### Introducing the *NEW* ALGAE-X Product line

**ALGAE-X** has been totally re-engineered and upgraded. The new product features the same benefits as the older units in our brochure. However, they are now much more powerful and efficient with upgraded magnetic circuitry and improved manufacturing techniques, with **Lower Prices and a Lifetime Warranty.**

## The New LG-X Series Magnetic Fuel Conditioners

- Machined from high grade, corrosion resistant aluminum, and Anodized for additional Protection
- More Powerful Magnetic Materials improve fuel treatment, for Optimal Fuel Quality, Enhanced Combustion & Less Smoke Eliminating Clogged Filters and Sludge build up in Tanks
- **Direct Flow-Thru, Self Cleaning & Zero Maintenance**

## New Specs & New Prices

| Model | Port size | HP | Flow Rate* (GPH) | Price*** |
|-------|-----------|------|--------------|----------|
| 200 | 1/4" | < 200 | 25 | $125 |
| 400 | 3/8" | 100-500 | 20-90 | $245 |
| 500** | 1/2" | 100-500 | 20-90 | $245 |
| 1000 | 1/2" | 300-1500 | 60-350 | $475 |
| 1500** | 3/4" | 300-1500 | 60-350 | $475 |
| 3000** | 1" | 900-3000 | 350-800 | $995 |
| 4000 | 1.5" | 3000 + up | 750-1500 | $2795 |
| 5000 | 2" | 5000 + up | 750-2500 | $2995 |

**ALGAE-X®** is made in the USA                    *Lifetime Warranty*

Foot notes:
* Recommended Flow Rate ranges are in gallons per hour for *engine applications*.
- For *Re-circulation Systems* the flow capacity is double
  E.g. LG-X 200 = 50 gph, LG-X1000 & 1500 = 700 gph, etc.
** **New model numbers**
*** Prices have been changed for all units except for the LG-X400 & LG-X1000

FORM 9801



- THE INDUSTRY REACTS TO NEW SAFETY REGS
- THE DR. KEVORKIAN OF INFIRM FISHING BOATS
- ADD-ON FEATURES THAT BEEF UP OUTBOARDS

# National Fisherman

JULY 1999

THE LIFE AND BUSINESS OF PROFESSIONAL FISHING



# UNITED WE STAND

The nation's largest fishing associations and the battles they wage

MADISON AVENUE'S LOVE AFFAIR WITH COMMERCIAL FISHERMEN

AFTER THE GOLD RUSH: NETTING GLASS EELS IN NEW ENGLAND

FINDING THE RIGHT SONAR FOR YOUR FISHERY — AND BUDGET

www.nationalfisherman.com

## VESSEL MAINTENANCE



*Antifouling Paint*

Circle Reader Inquiry # 94

For Aluminum Vessels, Tin, & Copper Free!



E. Paint Company
25 Research Road, E. Falmouth, MA 02536
Ph: (800) 258-5998 • (508) 540-4412

### Remove Paint, Rust & Barnacles

Circle Reader Inquiry # 93

New Swirl-Off scarifier from the Desmond-Stephan Mfg. Co. scours surfaces rapidly to remove paint, rust & barnacles. Attaches to portable grinders, sanders, & drills. Can also be used underwater using pneumatic tools.

SWIRL-OFF

THE DESMOND-STEPHAN MFG. CO.
P.O. BOX 26, URBANA, OHIO 43078
PHONE: 937-653-7111 • FAX: 937-652-0811

## PACKAGING



ALGAE-X

Circle Reader Inquiry # 95

ALGAE-X permanently ends clogged filters and poor engine performance caused by contaminated fuel (algae). It stops sludge build-up in tanks and filters. Improves performance and reliability, extends injector, pump and engine life. ALGAE-X is a zero-maintenance, one-time installation, eliminating the need for tank chemicals. ALGAE-X, the next generation of fuel decontamination units, features a revolutionary direct flow-through and self-cleaning design.

EnviroResponse Products, Inc.
P.O. Box 4011
Ft. Myers Beach, FL 33932
Ph: 800-403-3284 • Fax: 941-463-7855

## BUILDINGS/STORAGE



BOAT STORAGE / WORKSHOPS
-- FACTORY DIRECT --
Immediate or Deferred Delivery

Circle Reader Inquiry # 112

SAVE UP TO 45%



CALL TODAY!

Miracle Truss, the pre-engineered, assemble-yourself Steel Frame Building System.

• Strong, steel frame construction stands up to extreme weather conditions.
• Fast and easy do-it-yourself assembly requires no heavy equipment.
• Assortment of building designs, sizes and colors to choose from.

MIRACLE TRUSS
1-800-843-8275

## MARINE SUPPLIERS

Circle Reader Inquiry # 92

### The newest power on the water.

John Deere has added the 12.5 L POWERTECH engine to their marine lineup. You can now choose a reliable John Deere diesel from 70-450 hp (53-336 kW) for propulsion, auxiliary, or gen-set power. See your John Deere marine dealer or engine distributor for details.

## MARINE SUPPLIES

### GUY COTTEN

Circle Reader Inquiry # 96

The NEW X-TRAPPER Bib Trousers
TOP PERFORMANCE IN PROTECTION
Stronger ...Lighter

X3 Triple layer on the chest in ripstop fabric

X2 double layer on the whole front/outside layer in our exclusive ripstop fabric

X3 Triple inside layer used as pocket for hose pads

Stronger...lighter Fabric covering the whole back

X2 Double reinforcement at the back bottom

Ask for our new '99 flyer!
782 South Water Street • New Bedford, MA 02740
Tel: (800) 444-6050 • Fax: (508) 996-4338
Website: guycottenusa.com
Email: gcotten@ma.ultranet.com

### The Original Swivel Base Rod Holder
"ALL STAINLESS"

Circle Reader Inquiry # 98

There are cheaper imitations out there, but only one is made to the LEE Standard. Only LEE has the One Piece Cup. Fine thread tensioning shaft has Double-O-Washer to prevent tension change. Heat weld reliability! Comes in three angles, 30, 15 & 0 degree. Extra long versions too!



LEE'S TACKLE INC.
8227 NW 56th St., Miami, FL 33166
TEL: (305) 599-9324 FAX: (305) 598-0630
www.leestackle.com

### KNIFE SHARPENER

Circle Reader Inquiry # 106

The Tru Hone Knife Sharpener gives you a perfectly sharpened knife in a fraction of the time required by old-fashioned methods. It sharpens both bevels of a knife simultaneously, resulting in equal bevels and precision sharpness in less than a minute. The Tru Hone can easily be adjusted to different angles, allowing you to tailor your knives for any type of cutting operation. Its heavy duty stainless steel construction and 1/2 hp motor mean you will get years of maintenance free knife sharpening.

TRU HONE CORPORATION
1721 N.E. 19th Avenue
Ocala, FL 34470
1-800-237-4663 FAX (352) 622-9180

## MARINE SUPPLIES

### KNIFE STEEL

Circle Reader Inquiry # 107

Tru Hone's Crossteel realigns a knife edge for razor sharpness. It uses two spring tensioned pivoting rods for smooth steeling action. No more guessing at what angle to steel a knife. New employees can be trained to steel a knife in minutes with the Crosteel and it is built tough enough to mount right on the line. Contact Tru Hone Corporation for more information.

TRU HONE CORPORATION
1721 N.E. 19th Avenue
Ocala, FL 34470
1-800-237-4663 FAX (352) 622-9180



Circle Reader Inquiry # 109

The William E. Munson Co. produces the revolutionary PACKCAT tunnel hull catamaran landing craft (Patent Pend). This hull form offers greater stability, higher speed and shallower draft than any other design and is available in sizes from 18' to 40'. For a brochure on aluminum high performance landing craft contact the company at...
(425)672-4634 or fax (425)774-2406

WILLIAM E. MUNSON
18130 Sunset Way
Edmonds, WA USA 98026-5331
www.billmunsonboats.com



Circle Reader Inquiry # 111

Workskiff -- incredibly strong, all-welded aluminum boat built for severe service. The versatile 16, 19, and 23 ft. hulls are built of premium 5086 alloy, easily adapt to a variety of work situations, and are readily customized. Ideal for delivery from stock. Various factory options are available to enhance the basic boat.

ALUMINUM BOATS FOR SEVERE SERVICE
WORKSKIFF INC.
26920 Pioneer Highway, Suite 109
P.O. Box 130, Stanwood, WA 98292-0130
E-mail: info@workskiff.com Web: www.workskiff.com
USA: CS-1-877-00633

## PROPULSION



Circle Reader Inquiry # 104

The Fernstrum Gridcooler is a closed-circuit cooling system engineered to meet your engine's cooling requirements and operating conditions. It is a durable, compact unit that comes completely assembled, made of 90/10 copper-nickel or 5,000 series aluminum tubing. Call us to find out which of over 8,000 models is right for you.

R.W. FERNSTRUM & CO.
1716 11th Ave., P.O. Box 97
Menominee, MI 49858-0097
(906) 863-5553 Fax (906) 863-5634

1       A     I have sold as Algae-X products that were

2   made by Purifiner Industries in New Zealand, that were

3   sold to other parts of the world Fuel Mag products.

4       Q     And you sold those products here; is that

5   correct?

6       A     I have sold the product that was made for

7   us by Purifiner Industries.

8       Q     Did Purifiner Industries make any products

9   that used the mark De-Bug on them?

10      A     I don't believe so.

11      Q     Did it have any markings at all or was it a

12  generic brown wrapper magnetic fuel device?

13      A     The products that we got from Keith

14  Johnston, came shipped in bulk without any packaging in

15  what we call and marketed as such the Algae-X L400, had

16  in the casting stamped Fuel Mag.

17      Q     But it did say Fuel Mag on them?

18      A     Yes.

19      Q     And was this like a sticker you placed on

20  them?

21      A     No, it was in the casting.

22      Q     Oh, it was in the casting.  And you do not

23  use them anymore, correct?  You've gone to another

24  source?

25      A     We are no longer selling products made by

1      Purifiner.

2          Q      You were at one time in 1996 an exclusive

3      distributor for Purifiner in the United States; is that

4      correct?

5          A      Yes.

6          Q      And how did that arrangement become

7      terminated; if it did?

8          A      To -- after the De-Bug affair and coming

9      back to the market with all Algae-X products --

10         Q      I'm sorry, could you give us -- when you

11     say the "De-Bug affair," could you give us a date for

12     that so we can follow the other one up through.

13         A      -- Sorry.  I'll put it --

14         Q      I'm sorry, just go ahead and tell your

15     story, and we'll see if we can put some dates there.

16         A      -- I'll put the dates in.

17         Q      That would be excellent, thank you.

18         A      When it became evident that the supply of

19     products from Lindsay had dried up, and we had managed

20     to come back to the market with a product line -- we

21     sold as Algae-X products in the course of '97, we did a

22     deal with an investor --

23         Q      I'm sorry -- a what?

24         A      -- A investor.

25         Q      A investor, okay.

```
1          A      The man's name is Bill Bois (phonetic)

2     representing a company as BSI or B & S Investments.

3     Bill Bois and myself signed agreements to establish a

4     joint venture.  And the contribution that our company

5     made was selling -- putting its assets into the joint

6     venture.  Whereas Bois' contribution to the joint

7     venture was putting in money.

8          Q      When you say "your company," you mean

9     Enviro Response; is that correct?

10         A      Yes.

11         Q      Continue, please.

12         A      That was it.

13         Q      That was it?

14         A      Yes.

15         Q      What's the time period that you were going

16    to put in?

17         A      Pardon?

18         Q      You said you were going to put the dates

19    in.

20         A      Yeah, I said '97 -- contracts were signed

21    September 15, of '97.

22         Q      And this is the second group of people that

23    you had dealt with since De-Bug; is that right?

24         A      I don't understand the question.

25         Q      Wasn't there De-Bug and then there was
```

1    Purifiner and then there was BSI and now there is

2    somebody else.

3         A    No.  Purifiner was the supplier that

4    supplied the devices that we sold after the supply of

5    De-Bug products made by Lindsay Forrest dried up.

6         Q    That's from '95 to present or whenever?

7    Starting in 1995, you got them?

8         A    We started to buy those products in the

9    fall of '95, as we have stated or as I have stated.

10        Q    Just trying to get the dates.  And how long

11   did that continue?

12        A    The sale through Enviro of the products

13   that were made by Purifiner continued through -- into

14   ' 98.

15        Q    Mid '98, end of '98?

16        A    Early '98.

17        Q    Fine.  Now, you had indicated that you had

18   checked on some domain name searches and meta tags, and

19   I don't know if we mentioned cookies or not; did we

20   mention cookies?

21        A    I don't understand what --

22        Q    Fine then we won't get into cookies.

23        A    -- Moses Calerro had done that for us,

24   Moses is the web site guy, we mentioned his name

25   earlier.

# FORM TX

**For a Literary Work**

UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

TX 4-889-923



EFFECTIVE DATE OF REGISTRATION

May 27 1999

Month        Day        Year

099929065

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

1997 Algae-X Marketing Materials and Literature

**PREVIOUS OR ALTERNATIVE TITLES ▼**

N/A

**PUBLICATION AS A CONTRIBUTION**   If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

N/A

If published in a periodical or serial give: Volume ▼          Number ▼          Issue Date ▼          On Pages ▼

## 2

**NAME OF AUTHOR ▼**

**a**   Enviro Response Products, Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____ USA

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☑ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP**   Briefly describe nature of the material created by this author in which copyright is claimed. ▼

entire text, figures and photographs *and technical drawings

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NAME OF AUTHOR ▼**

**b**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP**   Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**c**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP**   Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3

**a**   **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**   This information must be given ONLY if this work has been published.
1997   ◀ Year

**b**   **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ 12   Day ▶ 31   Year ▶ 97
◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Enviro Response Products, Inc.
P.O. Box 4011
Ft. Myers Beach, FL  33932

See instructions before completing this space.

APPLICATION RECEIVED
MAY 27 1999
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
MAY 27 1999
REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE OFFICE USE ONLY

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

N/A

---

**MORE ON BACK ▶**
• Complete all applicable spaces (numbers 5-11) on the reverse side of this page.
• See detailed instructions.
• Sign the form at line 10.

DO NOT WRITE HERE

Page 1 of __    pages

\* Amended by C.O.  Authority of Melody
Ortz, for Edward Livingston, in
telephone call on June 1, 1999.

EXAMINED BY _____

CHECKED BY _____

☐ CORRESPONDENCE
   Yes

FORM TX

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION**  Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

N/A          \*1996 version

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N/A          updates and new material

**6**

See instructions
before completing
this space

**—space deleted—**

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS**    A signature on this form at space 10, and a check in one of the boxes here in space 8, constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.

a ☐ Copies and Phonorecords          b ☐ Copies Only          c ☐ Phonorecords Only

**8**

See instructions

**DEPOSIT ACCOUNT**  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼   N/A          Account Number ▼

**9**

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

Edward M. Livingston, Esq.
628 Ellen Dr./P.O. Box 1599
Winter Park, FL  32790

Area Code & Telephone Number ▶ (407) 629-4343

Be sure to
give your
daytime phone
◀ number

**CERTIFICATION\***  I, the undersigned, hereby certify that I am the

Check one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of Enviro Response Products, Inc.
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Edward M. Livingston          date ▶ 05/26/99

Handwritten signature (X) ▼

**10**

MAIL
CERTIFI-
CATE TO

Certificate
will be
mailed in
window
envelope

Name ▼
Edward M. Livingston, Esq.
Number/Street/Apartment Number ▼
P.O. Box 1599
City/State/Zip ▼
Winter Park, FL  32790

• Complete all necessary spaces
• Sign your application in space 10

1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Register of Copyrights
Library of Congress
Washington, D.C. 20559

Copyright law provides that any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

**11**

099929076



**FORM TX**
*For a Literary Work*
UNITED STATES COPYRIGHT OFFICE
REGISTRATION NUMBER



TX 4-899-922

EFFECTIVE DATE OF REGISTRATION

May 24 1999

Month  Day  Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

1996 Algae-X Marketing Materials and Literature

**PREVIOUS OR ALTERNATIVE TITLES ▼**

N/A

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

N/A

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

## 2

**a**  **NAME OF AUTHOR ▼**

Enviro Response Products, Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ USA

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☒ No
Pseudonymous?  ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
entire text ~~figures and~~ photographs  and technical drawings

**b**  **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**c**  **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3

**a**  **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1996 ◀ Year

**b**  **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ 12    Day ▶ 31    Year ▶ 96    ◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2.▼
Enviro Response Products, Inc.
P.O. Box 4011
Ft. Myers Beach, FL 33932

**APPLICATION RECEIVED**
MAY 27 1999
**ONE DEPOSIT RECEIVED**

**TWO DEPOSITS RECEIVED**
MAY 27 1999
**REMITTANCE NUMBER AND DATE**

DO NOT WRITE HERE  OFFICE USE ONLY

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼
N/A

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-11) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 10.

DO NOT WRITE HERE
Page 1 of __ pages

\* Amended by C.O.  Authority of Melody
Ortz, for Edward Livingston, in
telephone call on June 1, 1999.

| EXAMINED BY | FORM TX |
|---|---|
| CHECKED BY | |

☐ CORRESPONDENCE
  ☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼      Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼
  N/A

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼
  N/A

**6**

See instructions
before completing
this space

—space deleted—

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS**  A signature on this form at space 10, and a check in one of the boxes here in space 8, constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.

a ☐ Copies and Phonorecords        b ☐ Copies Only        c ☐ Phonorecords Only

**8**

See instructions

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼  N/A        Account Number ▼

**9**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

Edward M. Livingston, Esq.
628 Ellen Dr./P.O. Box 1599
Winter Park, FL 32790

Area Code & Telephone Number ▶  (407) 629-4545

Be sure to
give your
daytime phone
number

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the
                  Check one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of Enviro Response Products, Inc.
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Edward M. Livingston        date ▶ 05/26/99

Handwritten signature (X) ▼        _Edward Livingston_

**10**

**MAIL CERTIFICATE TO**

Name ▼
Edward M. Livingston, Esq.
Number/Street/Apartment Number ▼
P.O. Box 1599
City/State/Zip ▼
Winter Park, FL 32790

Certificate will be mailed in window envelope

• Complete all necessary spaces
• Sign your application in space 10

1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Register of Copyrights
Library of Congress
Washington, D.C. 20559

**11**

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1992—300,000                  ☆ U.S. GOVERNMENT PRINTING OFFICE: 1992-312-432/60,004